| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF NORTH CAROLINA, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| PLANTATION PIPE LINE COMPANY, | ) ) |
| Defendant. | ) ) ) |

## CONSENT DECREE

## I. BACKGROUND

A.     Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of North Carolina ("State"), have filed a Complaint concurrently with this Consent Decree against the Defendant, Plantation Pipe Line Company ("Plantation" or "Defendant"), alleging that Defendant is liable for civil penalties and injunctive relief pursuant to the Clean Water Act, as amended, ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, and pursuant to N.C. Gen. Stat. §§ 143-215.83, 143-215.1, resulting from four discharges of oil during the period January 2000 to November 2006 from pipelines owned and/or operated by Plantation ("Plantation Pipeline System").  The United States further alleges that Defendant failed to prepare and implement a Spill Prevention, Control, and Countermeasure Plan ("SPCC Plan") for its Newington, Virginia facility, as required by 40 C.F.R. § 112.3.

B.     On or about January 10, 2000, approximately 100 barrels of jet fuel were discharged from a portion of the Plantation Pipeline System in Newington, Virginia, some of which entered into Accotink Creek and its adjoining shorelines ("Newington Discharge").  The Newington Discharge

resulted from a failed gasket on an interface detector.

C. On or about March 13, 2002, approximately 20 barrels of oil or jet fuel were discharged from a portion of the Plantation Pipeline System in Alexandria, Virginia, some of which entered into an unnamed tributary of Hooff Run and its adjoining shorelines ("Alexandria Discharge"). The Alexandria Discharge appears to have resulted from a hole in the pipeline caused by high-voltage arcing between the pipeline and a utility pole anchor.

D. On or about February 22, 2003, approximately 788 barrels of gasoline were discharged from a portion of the Plantation Pipeline System in Hull, Georgia, some of which entered into an unnamed tributary of East Sandy Creek and its adjoining shorelines ("Hull Discharge"). The Hull Discharge resulted from a failed gasket on a buried block valve.

E. On or about November 27, 2006, approximately 97 barrels of gasoline were discharged from a portion of Plantation's Pipeline System in Mecklenburg County, North Carolina, into Paw Creek and its adjoining shorelines ("Mecklenburg Discharge"). The Mecklenburg Discharge resulted from a failed gasket on an above-ground block valve.

F. In addition to the work pursuant to this Consent Decree, Plantation represents that it has taken the following steps to decrease the likelihood of other such discharges: (i) moved the location of the interface detector that resulted in the Newington Discharge inside the containment area for the Newington facility, and (ii) established a protocol to drive or walk the pipeline segment where the Alexandria Discharge occurred at least once every ten days to look for changed circumstances in the right of way that might interfere with the cathodic protection on the pipeline.

G. To address the circumstances leading to the Mecklenburg Discharge, Plantation represents the following steps:

(i) eliminated the valve that ruptured and replaced with an insulated section that will maintain the integrity of the cathodic protection systems and eliminate any flanged connections;

(ii) mechanically inspected the control valve involved to ensure proper functioning,

(iii) evaluated the electrical signals to the control valve and the software logic for the control valve

(iv) operated the control valve through a full range of functions and conditions,

(v) installed meters on the signal lines to the control valve to evaluate potential problems with the signal lines, and

(vi) provided staff on-site during the initiated startups of product deliveries, and inspected the system following deliveries, until the corrective action was effected.

H. Defendant had not prepared an SPCC Plan for Tank 113, an aboveground storage tank in its Newington, Virginia facility, within the time frame required by the CWA. In or about September 2006, Plantation submitted a written SPCC Plan to EPA for Tank 113.

I. Plantation does not admit or deny any allegation in the Complaint or any liability to the United States or the State arising out of the transactions or occurrences alleged in the Complaint;

J. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE**, before taking testimony and without the adjudication or admission of any issue of fact or law except as provided in Section II, below, and with the consent of the

Parties, **IT IS HEREBY ADJUDGED AND DECREED** as follows:

## II. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of the United States' claims pursuant to 28 U.S.C. §§ 1331 (Federal Question), 1345 (United States as Plaintiff), 1355 (Fine, Penalty or Forfeiture), and CWA Sections 309(b), (d) and 311(n), 33 U.S.C. §§ 1319(b), (d), 1321(n).

2.      This Court has jurisdiction over the subject matter of the State's claim pursuant to 28 U.S.C. § 1367(a) (Supplemental Jurisdiction), because the State's claims are so related to the federal claims that they form part of the same case or controversy.

3.      For the purposes of this Consent Decree, or any action to enforce this Consent Decree, the Parties consent to the Court's jurisdiction, and stipulate that venue lies in this District pursuant to 28 U.S.C. § 1391.

4.      Notice of the commencement of this action has been given to the States of North Carolina, Georgia, and Virginia, or will be given concurrently with the filing of the Complaint and lodging of this Consent Decree, as required by CWA Section 309(b), 33 U.S.C. § 1319(b).

## III. APPLICABILITY

5.      The obligations of this Consent Decree apply to and are binding upon the United States, the State, Defendant, and upon any successors, assigns, or other entities or persons otherwise bound by law.  No transfer of ownership or operation of any portion of the Plantation Pipeline System shall relieve Defendant of its obligation to ensure that the terms of this Consent Decree are implemented for as long as the terms of the Consent Decree remain in effect.

a.      Defendant's transfer of ownership or operation of any portion of the Plantation

Pipeline System upon which work will be performed pursuant to this Consent Decree shall be conditioned upon the transferee's written agreement to undertake the obligations required by this Consent Decree, and such agreement shall be enforceable by the United States as third-party beneficiary.

b. At least thirty (30) days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee, and shall simultaneously provide to the United States written notice of the prospective transfer, together with a copy of a proposed written agreement executed by the transferee acknowledging the obligations imposed by this Consent Decree.

c. Any attempt to transfer a portion of the Plantation Pipeline System upon which work is to be performed pursuant to this Consent Decree without complying with the provisions of Section III (Applicability) constitutes a violation of this Consent Decree.

6. Unless the work to be performed pursuant to this Consent Decree is completed to EPA's satisfaction before the Consent Decree becomes effective, Plantation shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any of its provisions. Plantation shall condition any contract to perform work on the performance of the work being in conformity with the terms of this Consent Decree. In any action to enforce this Consent Decree, Plantation shall not raise as a defense the failure of any of its officers, directors, employees, agents, or contractors to take actions necessary to comply with the provisions of this Consent Decree.

## IV. DEFINITIONS

7. Terms used in this Consent Decree that are defined or used in the CWA shall have

the meanings assigned to them in that Statute, unless otherwise specifically provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

A.  "Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

B.  "Interest" shall mean interest at the rate specified in 28 U.S.C. § 1961.

C.  "Paragraph" shall mean those portions of this Consent Decree identified by an Arabic numeral.

D.  "Plantation Pipeline System" shall mean the pipelines, tanks, terminals, and other facilities owned by Plantation that transport or store oil from Louisiana to Virginia, including all associated valves, detectors and other equipment.

E.  "Section" shall mean those portions of this Consent Decree identified by a Roman numeral.

F.  "Spills" shall mean the Newington Discharge, the Alexandria Discharge, the Hull Discharge, and the Mecklenburg Discharge.

G.  "United States" shall mean the United States of America, and all of its departments, agencies, and instrumentalities.

## V. CIVIL PENALTIES

8.  Within thirty (30) days after entry of this Consent Decree by the Court, Plantation shall pay a civil penalty in the amount of seven hundred twenty-five thousand dollars ($725,000.00),

plus Interest accruing from the date of entry, as follows:

a. Defendant shall pay $715,000.00, plus Interest, to the United States. Payment shall be made by Fedwire Electronic Funds Transfer ("EFT") in accordance with instructions provided by the Financial Litigation Unit of the Office of the United States Attorney for the District of North Carolina. Such monies are to be deposited in the Oil Spill Liability Trust Fund. The payment shall reference the Civil Action docket number assigned to this case and DOJ Number 90-5-1-1-08337, and shall specify that the payments are made toward CWA civil penalties to be deposited into the Oil Spill Liability Trust Fund pursuant to 33 U.S.C. § 1321(s), § 4304 of Pub. L. No. 101-380, and 26 U.S.C. § 9509(b)(8). Any funds received after 11:00 a.m. Eastern Time shall be credited on the next business day. Defendant shall simultaneously provide notice of payment in writing, together with a copy of any transmittal documentation, in accordance with Section XIV of this Consent Decree (Notice). Defendant shall also provide written notice to the following:

National Pollution Funds Center
4200 Wilson Boulevard, Suite 1000
Arlington, Virginia  22203-1804

Commander Thomas Beistle
United States Coast Guard
Office of Claims and Litigation
2100 Second Street, S.W.
Washington, D.C. 20593-0001

b. Defendant shall pay $10,000.00 plus Interest to the State by check payable to the North Carolina Department of Environment and Natural Resources and sent to the following address:

John A. Payne
Assistant Attorney General
N. C. Department of Justice

Environmental Division
9001 Mail Service Center
Raleigh, NC 27699-9001

Defendant shall simultaneously provide notice of payment to the United States in writing, together with a copy of any transmittal documentation, in accordance with Section XV of this Consent Decree (Notice).

## VI.  PERFORMANCE OF WORK

9.      Within 30 days after entry of this Consent Decree, if not already done, to EPA's satisfaction, Defendant shall replace all G.K. Turner Model 253 detectors with KAM OID Optical Interface Detectors.

a.      No later than 60 days after entry of this Consent Decree, Defendant shall submit a report to EPA that confirms timely completion of this work, or explains why the deadline was not met.  The report shall also include the location, make and model of each part replaced, the approximate date that it was replaced, a photograph of each newly installed interface detector, and the cost of replacement.

b.      If the deadline in the preceding subparagraph is not met, then the report required by this Paragraph shall also include a proposed schedule for completion.  Defendant shall submit an updated report to EPA every three months after entry of this Consent Decree, until completion of this work.  Defendant will be subject to stipulated penalties for each day after the 60th day after entry of this Consent Decree, until all interface detectors are replaced.

c.      Within 30 days after all interface detectors are replaced, Defendant shall submit to EPA a final report that includes all information required by this Paragraph.

10.     Within 30 days after entry of this Consent Decree, if not already done to EPA's

satisfaction, Plantation shall complete permanent excavation and exposure to permit visual inspection of the 26 buried block valves in the Plantation Pipeline System that are not already exposed or welded in place.

a.      No later than 60 days after entry of this Consent Decree, Defendant shall submit a report to EPA that confirms timely completion of this work, or explains why the deadline was not met.  The report shall also include the location, description, make and model of each unburied valve, the date that it was unburied, a photograph of each newly unburied valve, and the cost of this work.

b.      If the deadline in the preceding subparagraph is not met, then the report required by this Paragraph shall also include a proposed schedule for completion.  Defendant shall submit an updated report to EPA every three months after entry of this Consent Decree, until completion of this work.  Defendant will be subject to stipulated penalties for each day after the 60th day after entry of this Consent Decree, until all buried block valves are excavated and exposed as required in this Paragraph.

11.      Defendant is responsible for ensuring that any employees or contractors hired to perform work pursuant to this Consent Decree shall comply with all applicable laws and with the terms of this Consent Decree.

## VII.  CERTIFICATION OF REPORTS

12.      Defendant shall submit all reports or notices required under this Consent Decree  to the persons designated in Section XV of this Consent Decree (Notices).

13.      Each report or notice submitted by Plantation pursuant to this Consent Decree shall be signed by the Director of Field Operations, currently Earl J. Crochet, who is a duly authorized

representative of Defendant, and shall include the following certification:

"I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather and present the information contained therein. I further certify, based on personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information contained in or accompanying this (submission/document) is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including possible fines and/or imprisonment."

## VIII.  STATE RESPONSE COSTS

14.     Within thirty (30) days after entry of this Consent Decree, Defendant shall reimburse the State five hundred and eighteen dollars ($518.00) in satisfaction of the State's claim for costs incurred prior to lodging of this Consent Decree in response to the Mecklenburg Discharge.

        a.      Payments shall be made by check payable to the North Carolina Department of Environment and Natural Resources and sent to the following:

        John A. Payne
        Assistant Attorney General
        N. C. Department of Justice
        Environmental Division
        9001 Mail Service Center
        Raleigh, NC 27699-9001

        b.      At the time of payment, Defendant shall simultaneously send written notice of payment and a copy of any transmittal documentation referencing the Civil Action Number assigned to this case to all Parties, in accordance with Section XV of this Consent Decree (Notices).

## IX. STIPULATED PENALTIES

15.     If Defendant fails to pay the civil penalty and interest required under Section V (Civil Penalty) of this Consent Decree when due, or fails to pay response costs under Section VIII (State

Response Costs) when due, EPA or the State may assess a stipulated penalty of one thousand five hundred dollars ($1,500.00) per day for each day that the payment is late. These stipulated penalties shall be paid to the United States in accordance with the payment instructions in this Section, and to the State in accordance with instructions in Section VIII (State Response Costs).

16.     EPA may assess stipulated penalties for all violations of this Consent Decree, unless excused under Section X (Force Majeure). A violation includes failure to complete any obligation required by the terms of this Consent Decree, including the performance of work according to the requirements of this Consent Decree, and within the specified time schedules established by this Consent Decree. The stipulated penalty per violation, per day of non-compliance shall be:

| | |
|---|---|
| $1,000.00 | 1st through 14th day |
| $1,500.00 | 15th through 30th day |
| $2,500.00 | 30th day and beyond |

17.     If EPA sends a written demand for a Stipulated Penalty to Defendant, then Defendant shall pay any Stipulated Penalty within thirty (30) days of receiving the written demand. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties due under this Consent Decree.

18.     Stipulated penalties under this Section shall accrue simultaneously for separate violations of this Consent Decree, shall begin to accrue on the day after performance is due, and shall continue to accrue until performance is completed. If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for Interest on such penalties, as provided in 28 U.S.C. § 1961. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendant's

failure to pay any stipulated penalties.

19.     Stipulated penalties and Interest pursuant to 28 U.S.C. § 1961 shall continue to accrue during any dispute resolution under Section XI (Dispute Resolution). If the dispute is resolved by agreement, Defendant shall pay accrued penalties, if any are determined in the Agreement to be owing, together with Interest, to the United States within thirty (30) days of the effective date of that agreement. If the dispute is submitted to the Court for resolution and the United States prevails, Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within thirty (30) days of entry of the Court's decision or order.

20.     Except as described in Paragraph 15, all stipulated penalties and Interest shall be paid to the United States in accordance with the payment instructions in this Section, and to the State in accordance with instructions in Section VIII (State Response Costs).

21.     Payment of stipulated penalties either to the United States or the State shall also include transmittal correspondence referencing the case caption and docket number. Defendant shall send a copy of the transmittal correspondence to Plaintiffs as provided in Section XV (Notices).

22.     Defendant shall not deduct any stipulated penalties paid under this Section in calculating federal income tax.

23.     The stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or the State for Defendant's violation of this Consent Decree, the CWA, or any other applicable federal, state, or local law or regulations.

## X.  FORCE MAJEURE

24.     A "force majeure event" is any event beyond the control of Defendant, its contractors,

or any entity controlled by Defendant, that delays the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event as it is occurring and after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

25.     Defendant shall provide notice verbally or by electronic or facsimile transmission to EPA as soon as possible pursuant to Section XV (Notices) of this Consent Decree, but not later than forty-eight (48) hours after the time Defendant first learned of, or by the exercise of due diligence should have known of, a claimed force majeure event. Defendant shall also provide written notice, as provided in Section XV of this Consent Decree (Notices), within seven days (7) of the time Defendant first knew of, or by the exercise of due diligence should have known of, the event. The notice shall state the anticipated duration of any delay; its cause, Defendant's past and proposed actions to prevent or minimize delay, a schedule for carrying out those actions, and Defendant's rationale for attributing any delay to a force majeure event. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure event. Failure to provide verbal and written notice as required by this Paragraph shall preclude Settling Defendant from asserting any claim of force majeure.

26.     If EPA agrees that a force majeure event has occurred, EPA may agree to extend the time for Defendant to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation.

13

27.     If EPA does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by Defendant, then EPA's position shall be binding, unless Defendant invokes Dispute Resolution under Section XI of this Consent Decree, which Defendant must do no later than ten Days after receipt of notice of EPA's decision.  In any such dispute, Defendant bears the burden of proving that each claimed event is a force majeure event, that Defendant gave the timely verbal and written notices required by this Section, that the force majeure event caused any delay Defendant claims was attributable to that event, that Defendant exercised best efforts to prevent or minimize any delay caused by the event, and that Defendant complied with the requirements of this Section.

## XI.  DISPUTE RESOLUTION

28.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under this Consent Decree.  However, such procedures shall not apply to actions by the United States to enforce obligations of Defendant under this Consent Decree that have not been disputed in accordance with this Section.

29.     Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations between the United States and Defendant.  The dispute shall be considered to have arisen when Defendant sends a written notice of dispute to the United States, as provided in Section XV of this Consent Decree (Notices).  Such notice of dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty-one (21) days from the date of the written notice, unless that period is modified by written agreement.  If informal negotiations resolve the dispute, Defendant shall pay accrued penalties, if any are determined in the

14

agreement to be owing, together with interest, to the United States in accordance with Section IX.

If informal negotiations are unsuccessful, then the United States' position shall control unless

Defendant files with the Court a petition to resolve the dispute within thirty (30) days after the

conclusion of the informal negotiation period.  In any dispute under this Section, Defendant shall

bear the burden of demonstrating that its position complies with this Consent Decree, the CWA, and

any other applicable law, and that Defendant is entitled to relief.

30.    The invocation of dispute resolution under this Section shall not extend, postpone,

or affect in any way any obligation of Defendant under this Consent Decree not directly in dispute.

Stipulated Penalties together with Interest shall continue to accrue with respect to the disputed matter

from the first day of non-compliance, but payment shall be stayed pending resolution of the dispute.

If Defendant does not prevail on the disputed issue, Stipulated Penalties plus Interest shall be

assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.  INFORMATION COLLECTION AND RETENTION

31.    The United States and its representatives, including attorneys, contractors, and

consultants, shall have the right of entry into any facility covered by this Consent Decree, at all

reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;
b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;
c.    obtain documentary evidence, including photographs and similar data; and,
d.    assess Defendant's compliance with this Consent Decree.

32.    This Consent Decree in no way limits or affects any right of entry and inspection, or

any right to obtain information, held by EPA or the State pursuant to applicable federal or state laws,

regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain

documents, records, or other information imposed by applicable federal or state laws, regulations or permits.

33.     Defendant shall retain and shall instruct its contractors and agents to preserve all underlying documents from which it has compiled any report or other submission required by this Consent Decree, and all non-identical copies of all documents, records, or other information within its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, that relate in any manner to Defendant's performance of its obligations under this Consent Decree until six (6) years after termination of this Consent Decree.  At any time during this information-retention period, upon request by EPA, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.  At the conclusion of the information-retention period, Defendant shall notify EPA Region III at least ninety (90) days prior to the destruction of any documents, records, or other information subject to the requirements of this Paragraph; upon request by EPA, Defendant shall deliver any such documents, records or other information to EPA.

34.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CWA, its implementing regulations, or any other federal, state, or local law, regulation, or requirement.

35.     Any information provided pursuant to this Consent Decree may be used by the United States in a proceeding to enforce the provisions of this Consent Decree, or as otherwise permitted by law.

<u>XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS</u>

36.     Effective on Defendant's performance of its payment obligations in Section V (Civil

Penalties), VIII (State Response Costs), and IX (Stipulated Penalties), and on its full and satisfactory completion of its obligations under Section VI (Performance of Work), this Consent Decree resolves Defendant's liability for the civil claims of the United States and of the State alleged in the Complaint.

37.     This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the CWA, or under other federal or state laws, regulations, or permit conditions, except as expressly specified herein.  The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.

38.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for unreimbursed costs, damages, cleanup, remediation, or other appropriate relief relating to the Spills, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or any other defenses based on contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case.

39.     This Consent Decree is not a permit, nor a modification of any permit, under any federal, state, or local law or regulation.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, orders, contracts, and permits.  Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, orders, contracts, or permits.  The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with

provisions of the CWA, or with any other provisions of federal, state, or local laws, regulations, orders, contracts, or permits.

40. This Consent Decree does not limit or affect the rights of Defendant, the United States or the State against any third parties that are not party to this Consent Decree, nor does it limit the rights of third parties that are not party to this Consent Decree against Defendant, except as otherwise provided by law.

41. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party that is not party to this Consent Decree.

42. Defendant hereby covenants not to sue and agrees not to assert any claim related to the Spills, or related to response activities in connection with the Spills, against the United States or the State pursuant to the CWA or any other federal law, state law, or regulation, including, but not limited to, any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund.

43. This Consent Decree is without prejudice to the rights of the United States or the State against Defendant with respect to all matters other than those expressly specified in Paragraph 36 above, including, but not limited to, the following:

    a.    claims based on a failure of Plantation to meet a requirement of this Consent Decree;

    b.    criminal liability;

    c.    liability for past, present, or future discharges of oil other than the Spills alleged in the Complaint;

    d.    reimbursement to the federal Oil Spill Liability Trust Fund for any disbursements arising from the Spills or any other related incident, including claims for subrogated claims pursuant to Section 1015 of the Oil Pollution Act, 33 U.S.C. § 2715;

    e.    removal and monitoring costs that may be incurred by the State in connection with the Mecklenburg Discharge after the lodging of this Consent Decree; and

    f.    liability for damages for injury to, or loss of natural resources, and for the

cost of any natural resource damage assessments.

## XIV. COSTS

44.     The Parties shall bear their own costs in this action, including attorney's fees; except that the United States shall be entitled to collect the costs of an action brought to enforce this Consent Decree, including attorney's fees, if the United States prevails in that action.

## XV. NOTICES

45.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing. When notice or other communication is required to the United States, it shall be submitted to all three addresses given below for the federal government; when notice is required only to EPA, it shall be submitted only to the two EPA addresses below:

> As to the United States:
>
> Section Chief (Re: DOJ # 90-5-1-1-08337)
> Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611, Ben Franklin Station
> Washington, DC 20044
>
> As to EPA Region III:
>
> Natalie Katz
> Senior Assistant Regional Counsel
> U.S. Environmental Protection Agency, Region III
> 1650 Arch Street (3RC30)
> Philadelphia, PA 19103
>
> As to EPA Region 4:
>
> Joan Redleaf Durbin

Associate Regional Counsel
U.S. Environmental Protection Agency, Region 4
SNAFC, 13th Floor
61 Forsyth Street, SW
Atlanta, GA  30338

As to Plantation:

Earl J. Crochet
Director, Field Operations
Kinder Morgan Energy Partners, L.P.
1100 Alderman Drive, Suite 200
Alpharetta, Georgia  30005

Jessica Toll, Esq.
Kinder Morgan Energy Partners, L.P.
Assistant General Counsel
370 Van Gordon Street
Lakewood, CO  80228

Robert F. Hogfoss, Esq.
Hunton & Williams LLP
600 Peachtree Street NE
Atlanta, GA 30308-2216

As to the State:

John A. Payne
Assistant Attorney General
N. C. Department of Justice
Environmental Division
9001 Mail Service Center
Raleigh, NC 27699-9001

46.     To provide verbal, facsimile or electronic notification as may be required by this

Consent Decree:

a.     If notification involves an obligation within EPA Region III, contact

Michael Welsh by telephone at 215-814-3285, by fax at 215-814-3001, or electronically at

welsh.mike@epa.gov.

b.     If notification relates to an obligation within EPA Region 4, contact Joan Redleaf Durbin by telephone at 404-562-9544, by fax at 404-562-9664, or electronically at redleaf-durbin.joan@epa.gov.

47.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.  Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.  EFFECTIVE DATE

48.     The Effective Date of this Consent Decree shall be the date on which this Consent Decree is entered as an Order of the Court, or a motion to enter the Consent Decree is granted, whichever occurs first.

## XVII. RETENTION OF JURISDICTION

49.     The Court shall retain jurisdiction over this case until termination of this Consent Decree for the purpose of resolving disputes arising under this Consent Decree, entering orders modifying this Consent Decree pursuant to Sections XI (Dispute Resolution), and Section XVIII (Modification), or effectuating or enforcing compliance with its terms.

## XVIII.  MODIFICATION

50.     The terms of this Consent Decree may be modified only by a written agreement signed by all the Parties; except that changes in brand or type of equipment necessary to comply with work requirements only requires the written approval of EPA.  Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval by the Court.

## XIX.  TERMINATION

51.     After Plantation has completed performance of its obligations required by this Decree, including payment of Civil Penalties under Section V, payment of State Response Costs under Section VIII, payment of any accrued Stipulated Penalties under Section IX, and Performance of Work under Section VI, Plantation may submit to the United States in writing a request for termination, stating that Plantation has satisfied those requirements and all other requisite conditions for termination of the Decree, together with all necessary supporting documentation.

52.     Not later than one hundred twenty (120) days after receipt of Plantation's written request for termination, the United States shall advise Plantation in writing whether or not it agrees with Plantation's request for termination.  If the United States agrees that the Decree may be terminated, the United States shall file a motion for termination of the Decree.  If the United States does not agree that the Decree may be terminated, Plantation may invoke dispute resolution under Section XI of this Decree.

## XX.  PUBLIC PARTICIPATION

53.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment, consistent with the procedures set forth in 28 C.F.R. § 50.7.  Defendant hereby agrees not to oppose entry of this Consent Decree by the Court.  The United States reserves the right to withdraw or withhold its consent if comments received disclose facts or considerations indicating that the Consent Decree is unlawful, inappropriate, or inadequate.

## XXI.  SIGNATORIES/SERVICE

54.     The Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, on behalf of the United States, and each undersigned representative of

the State and of Plantation certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents.

55. This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

56. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXII.  INTEGRATION

57. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied herein, and supersedes all prior agreements and understandings, whether verbal or written.  No other document, nor any representation, inducement, agreement, understanding, or promise constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXIII.  FINAL JUDGMENT

58. Upon approval and entry by the Court, this Consent Decree shall constitute a final judgment between the United States, the State, and Plantation.

Signed: February 10, 2009

**SO ORDERED**.

Robert J. Conrad, Jr.
Chief United States District Judge

FOR THE UNITED STATES:

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


**s/ W. Benjamin Fisherow**
W. BENJAMIN FISHEROW
Deputy Section Chief
Environmental Enforcement Section


**s/ Robert E. LeFevre**
ROBERT E. LEFEVRE
Trial Attorney
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-8860
Robert.Lefevre@usdoj.gov

GRETCHEN C. F. SHAPPERT
UNITED STATES ATTORNEY
Western District of North Carolina


**s/ Sidney P. Alexander**
Assistant United States Attorney
Sidney P. Alexander
NC Bar No. 37386
Attorney for the Plaintiffs
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
(828) 271-4661
(828) 271-4327 fax
sid.alexander2@usdoj.gov

**s/ Donald S. Welsh**
DONALD S. WELSH
Regional Administrator
U.S. Environmental Protection Agency, Region III
Philadelphia, PA


**s/ Natalie L. Katz**
NATALIE L. KATZ
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

**s/ J. I. Palmer, Jr.**
J. I. PALMER, JR.
Regional Administrator
U.S. Environmental Protection Agency, Region 4
Atlanta, GA


**s/ Joan Redleaf Durbin**
JOAN REDLEAF DURBIN
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street S.W.
Atlanta, GA 30303-8960

**s/ Granta Y. Nakayama**
GRANTA Y. NAKAYAMA
Assistant Administrator for Office of
Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Washington, D.C.


**s/ Cheryl T. Rose**
CHERYL T. ROSE
Senior Attorney
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Mail Code 2243A
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

**FOR PLANTATION PIPE LINE COMPANY:**

**s/ Ronald G. McClain**
RONALD G. MCCLAIN
Vice President of Engineering and Operations

NORTH CAROLINA DEPARTMENT
OF ENVIRONMENT AND NATURAL RESOURCES


By: **s/ Paul E. Rawls**
E. RAWLS
Surface Water Protection Chief
Division of Water Quality


ROY COOPER
Attorney General
State of North Carolina

By: **s/ John Payne**
JOHN PAYNE
Assistant Attorney General
State Bar No. 24966
N.C. Department of Justice
Environmental Division
Post Office Box 629
Raleigh, N.C.   27602-0629
(919) 716-6600